NOT FOR PUBLICATION                                              (Docket No. 7)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                              :
M.G.,                                         :
                                              :
                        Plaintiff,            :        Civil No. 08-4019 (RBK)
                                              :
            v.                                :        **OPINION**
                                              :
EASTERN REGIONAL HIGH SCHOOL                  :
DISTRICT,                                     :
                                              :
                        Defendant.            :
_____          :

        This matter is a case study in an improper attorney's fee request.  Presently before the

Court is M.G.'s Motion for Summary Judgment for Prevailing Party Attorneys' Fees and Costs

as the prevailing party in a Rehabilitation Act claim (Docket No. 7).  The motion was filed by

Jamie Epstein, counsel for the Plaintiff.  Because the Court finds that Mr. Epstein's conduct in

this matter and others before the District of New Jersey shocks the conscience, the motion is

DENIED, Plaintiff is awarded no fees, and the case is DISMISSED.

## I.      BACKGROUND

        The facts in this case are grossly underdeveloped.  As is discussed below, Mr. Epstein

failed to illuminate the record by providing the required Local Civil Rule 56.1 statement of

undisputed and disputed material facts.  Moreover, the Defendant failed to respond to the Motion

for Summary Judgment altogether.  Accordingly, the facts that the Court can glean are taken

from the Complaint and Answer, but they are decidedly one-sided and incomplete, and many

1

may genuinely be in dispute.

Plaintiff M.G. is a student with a disability who attends (or attended) Eastern High School, a public high school supervised and managed by Defendant Eastern Regional High School District.  While a student at Eastern, M.G. was purportedly the subject of discipline for actions arising out of his disabilities, ADHD and OCD.  M.G. was also seemingly harassed because of his disability by other students, abuse of which Eastern was aware and failed to remedy.

On October 18, 2007, M.G. or perhaps his parents or perhaps his counsel, sent a letter to Dr. Harold Melleby, Superintendent of Schools for Eastern Regional High School District.  The letter requested that Defendant remedy the discipline and harassment.  Dr. Melleby allegedly never responded.  Subsequently, on December 18, 2007, Defendant sent "notice" to M.G. that he was subject to not graduating for failing to return a textbook at the end of 11th grade.  Compl. at ¶ 7e.

Thus, on January 7, 2008, Plaintiff, individually and by his parents, filed a due process petition with the New Jersey Department of Education, claiming, among other things, violations of the Rehabilitation Act of 1973 (Rehab Act).  That day, the matter was transferred to the Office of Administrative Law for trial.  On January 28, "2007" [1] the parties entered into a Consent Order.  Compl. at ¶ 9.  Among other things, the agreement required Defendant to provide M.G. an aide during for the remainder of the school year to prevent harassment and violations of school policy.  Compl. at Ex A.  Administrative Law Judge Solomon A. Metzger signed the Order and directed the parties to comply with its terms.

_____

[1] This is a typographical error by Plaintiff and the date should be 2008.

Thereafter, on August 12, 2008, Plaintiff individually filed a complaint against Defendant seeking only attorneys' fees and costs pursuant to the Rehab Act.  Defendant answered on September 2, 2008.  Plaintiff next filed a Motion for Summary Judgment on April 8, 2009, seeking attorneys' fees and costs totaling $29,080, based on Mr. Epstein's rate of $400 per hour. Notably the attached itemized billing statement included $4600 in estimated fees for responding to the motion.  In fact, Defendant never actually responded; however, Plaintiff filed a second brief and affidavit with the Court on July 31, 2009, explaining the impact on the pending motion of an intervening decision in the District of New Jersey, L.J. v. Audubon Bd. of Educ., Civ. No. 06-5350, 2009 WL 995458 (D.N.J. Apr. 13, 2009).  Mr. Epstein further affirmed the requested fees and costs, and requested an additional $480 for filing the supplemental brief, bringing the total request to $29,560.  He did not change his fee request in any way based on L.J. and further, he did not remove the $4600 in estimated fees.

## II.     STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

3

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Id.

Where a motion for summary judgment is unopposed, the court must "treat all facts properly supported by the movant to be uncontroverted." Brandon v. Warden, No. State Prison, Civ. No. 05-3031, 2006 WL 1128721, at *3 (D.N.J. Apr. 27, 2006) (citations omitted).  Here, the moving party is also the party bearing the burden of proof, so the Court must determine "that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 176 (3d Cir. 1990).

## III.   DISCUSSION

Plaintiff brings this action seeking fees for the violation of the Rehab Act, 29 U.S.C. § 701 et seq.  Section 504 of the Rehab Act prohibits any program or activity that receives federal funds[2] from discriminating against an otherwise qualified individual with a disability.  29 U.S.C.

---

[2] The Court notes that Defendant denies receiving federal funds.  See Answer at ¶ 16. However, the Court finds it highly implausible that this public school accepts no federal funds such that it is not subject to the Rehab Act.  Thus, the Court believes that it has subject mater

4

§ 794(a).  In an action to enforce a violation of the Rehab Act, the court "in its discretion, may

allow the prevailing party" a reasonable attorney's fee.  29 U.S.C. § 794a.[3]

What is clear from the above quoted language is that the award of attorney's fees to a

prevailing party under the Rehab Act is not a matter of right but a matter of discretion.  See

Martin v. California Dep't of Veterans Affairs, 560 F.3d 1042, 1053 (9th Cir. 2009) ("[The] text

makes an attorney fee award discretionary; if given, it may be made a part of the costs.").  The

natural consequence of this discretion is that sometimes an award is not justified at all.  As one

court has put it, "'may' sometimes means 'won't.'"  Brown v. Stackler, 612 F.2d 1057, 1059 (7th

Cir. 1980) (quoting Lynchburg Foundry v. Patternmakers L. of N. Am., 597 F.2d 384, 387-88

(4th Cir. 1979) (quoting Chief Justice Thomas McKean of Pennsylvania)).

## A.    Outright Denial of Fees

The Third Circuit has not precisely ruled on what standard a district court should apply

when deciding whether to deny attorneys' fees altogether.  Parenthetically, the Third Circuit has

favorably cited, though not expressly adopted, the standards from Brown v. Stackler (Brown II),

612 F.2d 1057 (7th Cir. 1980) and the underlying district court opinion, Brown v. Stackler

(Brown I), 460 F. Supp. 446 (N.D. Ill. 1978).  See Hall v. Borough of Roselle, 747 F.2d 838,

---

jurisdiction over this matter.

[3] Plaintiff purportedly seeks attorneys fees pursuant to 42 U.S.C. § 1988.  See Compl. at ¶ 20(A); Pl. br. at 4, ¶ 5.  Specifically, Plaintiff alleges that the "Complaint sought relief for denial of rights under the Rehabilitation Act of 1973 . . . in violation of 42 U.S.C. § 1988."  Pl. br. at 4, ¶ 5.  The Court notes, however, that § 1988 does not provide attorney's fees for a violation of the Rehab Act–which has its own attorneys' fees provision at 29 U.S.C. § 794a–and § 1988 does not provide any substantive rights that can be violated.  Thus, Plaintiff's fee request is appropriately examined under § 794a, though as a matter of analysis, under which provision the analysis proceeds is largely irrelevant as a fee determination either is the same.  See Durett v. Cohen, 790 F.2d 360, 362 n.1 (3d Cir. 1986).

841-42 (3d Cir. 1984); <u>see also</u> <u>Cimador v. Sec'y of Health & Human Srvcs.</u>, 645 F. Supp. 1273, 1276 (W.D. Pa. 1986) (citing <u>Brown II</u>).  The Third Circuit has also favorably cited <u>Fair Housing Council of Greater Washington v. Landow</u>, 999 F.2d 92 (4th Cir. 1993).  <u>See</u> <u>Deptford Township Sch. Dist. v. H.B. (Deptford III)</u>, 279 Fed. Appx. 122, 126 n.2 (3d Cir. 2008); <u>see also</u> <u>Erhart v. City of Atlantic City</u>, Civ. No. 00-6209, 2006 WL 2385061, at *9 n.6 (D.N.J. Aug. 17, 2006) (citing <u>Fair Hous.</u>).  Persuasive authority on this issue is also found in the First Circuit in <u>Lewis v. Kendrick</u>, 944 F.2d 949 (1st Cir. 1991).  <u>See</u> <u>Erhart</u>, 2006 WL 2385061, at *9 n.6 (citing <u>Lewis</u>); <u>Deptford Township Sch. Dist. v. H.B. (Deptford I)</u>, Civ. No. 01-784, 2006 WL 891175, at * 7 (D.N.J. Mar. 31, 2006), <u>rev'd</u>, 279 Fed. Appx. 122 (3d Cir. 2008) (holding Jamie Epstein not entitled to attorney's fees because not the prevailing party and because sought improper fees (citing <u>Fair Hous.</u>, 999 F.2d at 96)).  Each of these authorities is examined here.

### 1.      **Brown v. Stackler: Gross excess and demeaning the judicial process**

In <u>Brown I</u>, the prevailing party sought fees under 42 U.S.C. § 1988 for 834 1/2 hours spent on a case that all parties understood was going to be determined by the outcome of a pending Supreme Court decision.  460 F. Supp. at 446-47.  The defendants argued, and the district court agreed, that the amount of time submitted was "grossly excessive" given the relative simple nature of the dispute.  <u>Id.</u> at 447.  The court reasoned that a competent attorney would have only spent 100 hours on the matter.  <u>Id.</u>  From that conclusion, the court thus reasoned that where a fee petition so grossly overstates the hours reasonably spent, the court should not determine for itself a reasonable fee because to do so "would demean the dignity of the judicial process and invite inflated claims for fees."  <u>Id.</u>

In affirming the district court's outright denial of fees, the Seventh Circuit held that

outright denials where fees are "outrageously excessive" are "an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees."  Brown II, 612 F.2d at 1059.

In examining the Brown decisions, the Third Circuit noted that "members of the bar are quasi-officers of the court and they are expected to be careful and scrupulously honest in their representations to the court."  Hall, 747 F.2d at 841-42.  From this observation, and based on the reasoning in the Brown opinions, the Court seemingly concluded that fees may be denied altogether where the hours claimed by counsel are "grossly exaggerated or absurd," and the "integrity of counsel" is impugnable.  Id. at 842.

### 2.  Landow v. Fair Housing Council of Greater Washington: Shocks the conscience

The holding of Brown II was somewhat differently distilled by the Fourth Circuit in Landow v. Fair Housing Council of Greater Washington.  In Landow, the prevailing party sought fees under 42 U.S.C. § 1988 in the amount of $537,113 for a breach of contract dispute.  999 F.2d at 95.  The records submitted by the prevailing party generally lacked specificity as to whether the work performed was actually performed for the claim on which the party prevailed. Id.  Moreover, the district court found that the case was a simple contract dispute and reasonable fees should have only totaled $20,000.  Id.  The district court noted that it did not believe it had authority to deny fees altogether, but if it could do so it would have done so.  Id.

On appeal, the Fourth Circuit examined Brown II and held that a district court does have discretion to deny attorney's fees altogether.  Id. at 96.  It specifically held that "a district court

7

may, in its discretion, deny a request for attorneys' fees in its entirety when the request . . . is so outrageously excessive that it shocks the conscience of the court." Id. (internal quotations and modification removed).  Applying the shocks the conscience standard, the Fourth Circuit then held that the prevailing party in Landow was not entitled to any fees because of its "woefully inadequate time records, coupled with its failure to make a good faith effort to exclude fees attributable to unsuccessful claims . . . ." Id. at 97.

### 3.    Lewis v. Kendrick: Inexcusable reaching

Finally, in Lewis v. Kendrick, the First Circuit took a similar approach to the Fourth and Seventh Circuits in deciding when an outright denial of attorneys' fees is appropriate.  In Lewis, the prevailing party sought attorney's fees under 42 U.S.C. § 1988 in the amount of $132,788, despite only being awarded $1000 after a jury trial.  944 F.2d at 958 n.3.  The court of appeals, however, characterized the underlying dispute as "a routine street arrest on a citizen's call." Id. at 958.  The court noted that "§ 1988 [was] intended to enable injured parties to obtain counsel, not to enable counsel to obtain munificent fees." Id. at 956.  The court therefore concluded that where the fees sought were 140 times the amount of injury, such fees were "inexcusable." Id. The court further noted that while denying fees altogether is "strong medicine," such action is appropriate where counsel engages in "inexcusable reaching for fees–to the burden of the court." Id. at 958.  The court concluded by stating that "[a] request for attorney's fees is required to be in good faith and in reasonable compliance with judicial pronouncements, and not an opening gambit in negotiations to reach an ultimate result." Id.

### B.    Refining the Standards

Putting these standards together, with the guidance of the Third Circuit's rulings in Hall

and Deptford III, the Court concludes that attorney's fees under the Rehab Act may be denied

outright to a prevailing party where the fee requested is so "grossly exaggerated or absurd," Hall,

747 F.2d at 842, that the request "shocks the conscience of the court." Fair Hous., 999 F.2d at

96. Considerations in this analysis include whether counsel acted with sufficient integrity in

submitting the request to the court, see Hall, 747 F.2d at 842, and whether counsel engaged in

inappropriate reaching for excessive fees. See Lewis, 944 F.2d at 958.

Using these standards, the Court now turns to Plaintiff's request for fees and finds that

this request shocks the conscience of the Court.

### C.   Applying the Shocks the Conscience Standard

#### 1.   Prevailing party

As an initial matter, Plaintiff can only seek counsel fees under the Rehab Act if he is the

"prevailing party," see 29 U.S.C. § 764a(b), which the Court concludes that he is. To be the

prevailing party, a party must be "'successful' in the sense that it has been awarded some relief

by a court." P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 853 (3d Cir. 2006) (quoting

Buckhannon Bd. v. West Virginia D.H.H.R., 532 U.S. 598, 603 (2001)). A party can be

successful in the context of a stipulated settlement where the settlement "alters the legal

relationship of the parties" and is "judicially sanctioned." Id. (citing John T. ex rel. Paul T. v.

Delaware County Intermediate Unit, 318 F.3d 545, 558 (3d Cir. 2003)). In turn, a settlement is

judicially sanctioned where it 1) contains mandatory language, 2) is entitled "Order," 3) has the

signature of the judge, not the parties' counsel, and 4) provides for judicial enforcement. Id.

This rule applies with equal force in the context of a stipulated settlement before an

administrative law judge, with the caveat that order need not specify that the ALJ retains

enforcement authority if the order is actionable under 42 U.S.C. § 1983.  See id. at 854.

Here, Plaintiff was the prevailing party because he did achieve success on his claim.
Plaintiff's due process petition made four requests: 1) that M.G.'s discipline for behaviors that
were manifestations of his disability be rescinded; 2) that Eastern stop harassing M.G. and ensure
that M.G. was not subject to further harassment and discrimination; 3) that Eastern amend
M.G.'s 504 plan[4] to accommodate his disability to prevent further bullying and harassment; and
4) that Eastern cease and desist its pattern of retaliation against M.G. for asserting his rights.  Pl.
br. at Ex. A (Petition for Due Process).  The Consent Order entered into by the parties
incorporated these requests in large part–and thus provided Plaintiff some relief–by assigning an
aide to M.G. for the remainder of the school year to ensure that he was free from harassment.  Pl.
br. at Ex. B (Consent Order).  Moreover, the Consent Order entered into by the parties during
administrative proceedings changed their legal relationship by requiring Defendant to take
affirmative actions to protect M.G.'s rights.  Finally, the Consent Order was judicially sanctioned
because it 1) contained mandatory language, see id. at ¶ 1 ("Respondent *shall* provide Petitioner,
M.G., with a 1:1 aide for the remainder of the year." (emphasis added)), 2) was entitled "Consent
Order," 3) had the signature of Administrative Law Judge Solomon Metzger, and 4) the order is
actionable under § 1983.  Therefore, Plaintiff was the prevailing party.

### 2.      A history of exaggerated claims

Notwithstanding that Plaintiff was the prevailing party, the Court finds that he is
nevertheless not entitled to any attorneys fees because Jamie Epstein's fee request is so grossly
exaggerated and absurd that the request shocks the conscience of the court.

---

[4] Plaintiff fails to elaborate what M.G.'s 504 Plan was or what it was changed to.

In reaching this conclusion, the Court is first compelled to discuss Mr. Epstein's conduct in other cases in the District of New Jersey to provide a clear context for the egregiousness of the current fee request.  Jamie Epstein has previously submitted fee requests in at least three other cases in the District of New Jersey where the respective courts detailed at length the reasonableness of his fee: 1) Deptford Township Sch. Dist. v. H.B. (Deptford II), Civ. No. 01-784, 2006 WL 3779820 (D.N.J. Dec. 21, 2006),[5] rev'd, 279 Fed. Appx. 122 (3d Cir. 2008); 2) P.N. v. Clementon Bd. of Educ., Civ. No. 02-1351, 2007 WL 1186552 (D.N.J. Apr. 20, 2007); and 3) L.J. v. Audubon Bd. of Educ., Civ. No. 06-5350, 2009 WL 995458 (D.N.J. Apr. 13, 2009).

What becomes clear from these cases is that Jamie Epstein has a history of grossly overstating his fees, and treats his fee application as an opening offer rather than a carefully calculated and honest fee request.  For example, in Deptford II, Mr. Epstein sought $259,214.50 in counsel fees as the prevailing party in a claim under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.  2006 WL 3779820, at *1.  After careful analysis of over 16 pages of billing entries, the court concluded that the 861.1 hours Mr. Epstein submitted should be reduced to 328.5 hours, concluding that he should be awarded only $98,550. Id. at *8, *10.  In justifying its reduction, the court stated that the Mr. Epstein's fees were "excessive in light of counsel's experience and the scope of the matters in dispute," and stated further that the fees were "unreasonable in light of the clients' scant success on the merits."  Id. at * 1.  The court's final award represented just **38%** of the amount originally requested.

---

[5] Notably, this opinion arose after the court previously ordered Epstein to "greatly refine" his fee application.  See Deptford I, 2006 WL 891175, at *7.

On appeal, Mr. Epstein's fees were denied altogether because the Third Circuit determined that his clients were not the prevailing parties.  Deptford III, 279 Fed. Appx. at 126.  However, the court remarked in a footnote that even if Mr. Epstein had represented the prevailing party, fees would not have been appropriate because he achieved only "scant and unimpressive" relief and "[he]-either through gross carelessness or worse-initially sought fees that included 60 hours billed in a single day."  Id. at 126 n.2 (citing Fair Hous., 999 F.2d at 96).

Mr. Epstein likewise saw a significant reduction in his fee request in P.N. v. Clementon Board of Education.  In that case, Mr. Epstein sought $157,148 in attorney's fees and costs as the prevailing party under IDEA.  2007 WL 1186552, at *1.  After review of Mr. Epstein's request, the court reduced the fee request to $105,190 plus $428 in costs, for a total of $105,618.[6]  Id. at *13.  In its review, the court noted that the defendant requested that the fee be reduced across the board under Brown II, Fair Housing, and Hall.  Id. at *5.  The court however rejected a severe sanction, even though it found the fee request "unreasonable."  Id.  Instead, the court found that the request was not "so excessive as to warrant [across the board reduction]" and found that it could apply a line-by-line reduction.  Id.  The court's final award represented just **67%** of the amount originally requested.

Finally, in L.J. v. Audubon Board of Education, Mr. Epstein yet again saw a significant reduction in his fee request.  In that case, Mr. Epstein sought $97,606 in attorney's fees in costs as the prevailing party under an IDEA claim.  See Civ. No. 06-5350, Docket No. 92 at 14.  However, after the court completed its review of the request, Mr. Epstein was awarded a mere

---

[6] P.N. also included a reduction in fees for two other attorneys who joined Mr. Epstein in the matter.

$44,946.  2009 WL 995458 at *18.  This amount represented just **46%** of the original amount requested.[7]

### 3.    L.J. and M.G.

The basis for the significant reduction in L.J. warrants substantial review here because its facts are substantially similar to the pending motion, it was deciding during the pendency of this motion, and it was specifically briefed by Mr. Epstein.

The fee analysis in L.J. begins with the comment that "this is not the first time that Mr. Epstein, 'either through gross carelessness or worse,' has sought counsel's fees well in excess of that to which he could reasonably have believed he was entitled."  2009 WL 995458, at *8 n.9 (citing Deptford III, 279 Fed. Appx. at 126 n.2).  It continues: "Mr. Epstein's submission in this matter veers dangerously close to [shocking the conscience of the court] . . . ."  Id.  The court reached that conclusion by first examining Mr. Epstein's requested hourly rate of $400, id. at * 10, the same rate that Mr. Epstein purported to bill at in this matter.  See Pl. br. at 6, ¶ 2.

### a.    $400 billable rate

In L.J., Mr. Epstein claimed that as of January 1, 2008, his billable rate increased from $300 to $400.  2009 WL 995458, at *10; cf. Pl. br. at 7, ¶ 4.  He claimed his rate was reasonable

---

[7] Below is a summary of Mr. Epstein's filings in the District of New Jersey:

| Case | Fees Requested | Fee Received | Difference | % of Original |
|------|----------------|--------------|------------|---------------|
| Deptford II | $259,214.50 | $98,550 | $160,664.50 | 38% |
| P.N. | $157,148 | $105,618 | $51,530 | 67% |
| L.J. | $97,606 | $44,946 | $52,660 | 46% |
| TOTAL: | $513,968.50 | $249,114 | $264,854.50 | 48% |

because he graduated from law school twenty years ago and practices primarily in the field of education law.  2009 WL 995458, at *10; cf. Pl. br. at 6, ¶ 2.  In further support of his claimed rate, Mr. Epstein submitted the affidavits of John McGahren, Esq., a Newark-based environmental law attorney who billed at $575 per hour, and the affidavit of a Philadelphia-based education lawyer with twenty-nine years of experience who billed at $375 per hour.  2009 WL 995458, at *10; cf. Pl. br. at Ex. C; Pl. supp. br. at Ex. A.

The L.J. court rejected $400 as a reasonable rate.  First, the court noted that while it had given Mr. Epstein the opportunity to submit records showing that he had charged any client at a rate exceeding $250, he stated that he had no such records.  2009 WL 995458 at *11.  Second, the court noted that Mr. McGahren's affidavit was "entirely irrelevant" to the case because Mr. McGahren did not practice in the field of education law, and "his apparent area of specialization–complex environmental litigation–is not remotely comparable to Mr. Epstein's."[8] Id.  Third, as to the affidavit of the Philadelphia-based education lawyer, the court noted that even though he practiced in a large metropolitan area and had more years of experience than Mr. Epstein, the Philadelphia lawyer billed at a lower rate.  Id. at *11.  Fourth, the court noted that while it had given Mr. Epstein the opportunity to have an evidentiary hearing regarding the reasonableness of his rate consistent with Planned Parenthood of Central New Jersey v. Attorney General of New Jersey, 297 F.3d 253, 265 N.5 (3d Cir. 2002), Mr. Epstein declined it.  Id.  Fifth, the court noted that while Mr. Epstein had previously received $300 per hour in other cases,

---

[8] Not only was Mr. McGahren's affidavit irrelevant because he practiced in a different field–the affidavit was not even given to Mr. Epstein to support his fee request.  In fact, it appears that the McGahren affidavit used in L.J. and again used in this case was supplied for Pharmacia Corporation v. Motor Carrier Services Corporation, Civ. No. 3724 (D.N.J.).  See Civ. No. 06-5350, Docket No. 92 at Ex. B; Civ. No. 08-4019, Docket No. 7 at Ex. C.

14

those fees were not disputed.  Id. at *12; cf. Pl. br. at 7, ¶ 3.  Sixth and finally, the court noted

that the quality of the representation must be reflected in the hourly rate, and since Mr. Epstein

had engaged in "unnecessarily contentious, unprofessional and unproductive conduct," a reduced

hourly rate was warranted.  2009 WL 995458, at *12 (citing Blum v. Stenson, 465 U.S. 886, 899

(1984)).  Therefore, the court held in its opinion entered on April 13, 2009 that the reasonable

hourly rate for Mr. Epstein was $250 per hour.  2009 WL 995458, at *12.

The L.J. opinion was entered just five days after Mr. Epstein filed the present motion on

April 8, 2009.  See Docket No. 7.  To his credit, Mr. Epstein did file with the Court a

supplemental brief and affidavit attempting to explain away the L.J. holding–though it was filed

nearly three months later–but that brief does not remedy the egregiousness of Mr. Epstein's

current submission.[9]

First, Mr. Epstein again asserts that his hourly rate is $400 per hour.  Pl. br. at 7, ¶ 4; Pl.

supp. br. at 1, ¶ 3.  In support, he includes that he has specialized experience in education law

and working with disabled children.  Pl. br. at 6, ¶2; Pl. supp. br. at 1-2, ¶ 2.  Also in support, as

with L.J., he again attaches the affidavit of John McGahren, Pl. br. at Ex. C, and in the

supplemental brief, attaches the affidavit Gregory Johns, Esq., a New Jersey education lawyer.

Pl. supp. br. at Ex. A.  As was noted above, Mr. McGahren's affidavit is simply irrelevant.  Not

only does he practice in an entirely unrelated field, the affidavit was not even prepared for this

---

[9] The Court has not offered Mr. Epstein the opportunity to supplement the record with
any billing statements showing any client has paid him more than $250 per hour, nor has the
Court offered Mr. Epstein an evidentiary hearing on the reasonableness of his rate, as the L.J.
court did.  However, the Court finds that such offerings would be entirely futile given that the
Court otherwise finds that Mr. Epstein's request is so otherwise procedurally and factually
deficient, as is discussed below, that such proceedings would be a waste of time.

case.  Simply put, Mr. Epstein's reliance on it is preposterous.  His submission is the equivalent of saying a saying a little league baseball coach does the same thing as a professional baseball coach, thus they should be compensated similarly: A simply outlandish claim.

Second, Mr. Epstein's reliance on Mr. Johnson's affidavit is similarly deficient like it was with his reliance on the Philadelphia-based lawyer in L.G.  Mr. Johnson graduated law school in 1986 and was admitted to the New Jersey bar in 1987.  Pl. supp. br. at Ex. A, ¶ 1.  He concentrates his practice in special education, school law, real estate, and commercial litigation, and charges $325 per hour.  Id.  However, like the attorney in L.G., Mr. Johnson has more experience than Mr. Epstein, who graduated in 1989, and yet charges a lower rate.  Further, Mr. Johnson's representation that Mr. Epstein has a more specialized practice and therefore should command a higher rate is not availing to Mr. Epstein because he has not shown a demonstrated proficiency that should come with experience, and thus warrant a high rate.

For example, despite representing that he is entitled to $400 an hour–a rate that suggests a high quality of representation, see L.J., 2009 WL 995458, at *12–Mr. Epstein's filings with the Court are rife with procedural and legal errors.  First, Mr. Epstein filed this suit seeking relief under 42 U.S.C. § 1988.  Compl. at ¶ 20(B).  However, the claim is under the Rehab Act, which is not compensable under § 1988; it has its own attorney's fees provision.[10]  Second, Mr. Epstein, despite having appeared in the District of New Jersey on several occasions, is evidently unfamiliar with the Local Civil Rules.  Mr. Epstein filed both the original brief and the supplemental briefs as affidavits.  See Pl. br. at heading ("Affidavit and Brief in Support of

---

[10] Mr. Epstein also states that the Court has supplemental jurisdiction over "claims under state law."  Compl. at ¶ 1.  However, the only claim in this matter is a federal claim under the Rehab Act.

Dispositive Motion"); Pl. supp. br. at heading ("Supplemental brief and Affidavit"). Under Local Civil Rule 7.2(a), "[a]ffidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions, or both." Both affidavits and briefs supplied significant legal argument, including explaining how another honorable judge in this vicinage had "incorrectly decided my hourly rate." Pl. supp. br. at 3, ¶ 7 (discussing Judge Simandle's decision in L.J.). Under Rule 7.2(a), the Court could rightly reject Mr. Epstein's submissions altogether and further could sanction Mr. Epstein for a flagrant disregard of the rules. See Cannon v. Cherry Hill Toyota, Inc., 190 F.R.D. 147, 163-64 (D.N.J. 1999).[11]

Furthermore, Mr. Epstein's motion comes before the Court as a motion for summary judgment. Under Local Civil Rule 56.1, "[o]n motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed."[12] Here, Mr. Epstein supplied no such statement and the Court was left to wonder what was really in dispute.

These two particularly flagrant violations of the Local Rules, and an inexcusable misstatement of the applicable law, are not the type of violations an attorney commanding $400

---

[11] Mr. Epstein also violated Local Civil Rule 7.2(b) by failing to include a table of contents and a table of authorities with his brief.

[12] The Court did not order dismissal of the motion here because a Local Civil Rule 56.1 statement would not have cured the conscience shocking fee request.

an hour would make.  Put another way, Mr. Epstein has done nothing in this case, nor any other

case in the District of New Jersey, to suggest that he should command a premium billable rate.

Thus, his submission that he should be compensated at such a high rate is unsupportable.

### b.    Pre-rate change billing

Another deficiency in Mr. Epstein's submission in L.J. was that he posited that he

changed his rate from $300 to $400 per hour effective January 1, 2008.  2009 WL 995458, at

*10, n.11.  However, the court noted that much of Mr. Epstein's work in the L.J. matter occurred

before January 2008, and yet was billed at the purported new rate.  Id.  Nevertheless, the factual

misstatement seemingly only warranted a footnote because Mr. Epstein's rate was ultimately

reduced to $250 anyway.

Mr. Epstein made the same mistake in this case.  Mr. Epstein submitted twelve entries

that occurred before January 1, 2008.  Pl. br. at Ex. D.  He also again represented that his rate

changed from $300 to $400 per hour effective January 1, 2008.  Pl. br. at 7, ¶ 4; Pl. supp. br. at 3,

¶ 6.  Also again, Mr. Epstein billed the pre-2008 entries at a rate of $400, for a total of $3160.  At

Mr. Epstein's purported old rate, the total should have been only $2370, an overstatement of

$790.

Mr. Epstein's misstatement in this case warrants more than a footnote because it now

rises to the level of a Rule 11 violation.  Federal Rule of Civil Procedure 11 provides that an

attorney presenting to the court a pleading, written motion, or other paper, represents that the

factual contentions have evidentiary support.  Fed. R. Civ. P. 11(b)(4).  Rule 11 requires that if a

party later acquires knowledge that makes a prior submission incorrect, the party cannot rely on

the previously incorrect knowledge in filing subsequent papers.  See Gaiardo v. Ethyl Corp., 835

F.2d 479, 484 (3d Cir. 1987).  Here, when Mr. Epstein submitted the supplemental brief and

affidavit, he knew from the L.J. opinion that part of his fee submission was factually incorrect.

Nevertheless, not only did Mr. Epstein not correct his prior submission, he reaffirmed it by

requesting an additional $480 for filing the supplemental brief.  See Pl. br. at 6 n.3.

Mr. Epstein's conduct thus rises to the level of sanctionable conduct under Rule 11.

However, given that the Court is otherwise denying his requested fees, such sanctions are

unwarranted at this time.  Nevertheless, the Rule 11 breach does further illuminate the sheer

egregiousness of Mr. Epstein's fee request.

### c.  Billing for clerical tasks

Yet another reason the L.J. court reduced Mr. Epstein's fees was for the excessive amount

he billed for clerical tasks.  2009 WL 995458, at *13.  First, the court noted that the single

biggest entry was for 26.2 hours spent logging bill entries, which totaled a shocking $10,480.  Id.

at *13.  The court cited Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir.

1995) for the proposition that "clerical work is not properly billed at the rate of an experienced

attorney like Mr. Epstein."  Id. (modifications removed); see also Deptford II, 2006 WL

3779820, at *9 ("[A]ny time spent finalizing bills is not work that warrants an attorney's time

and attention, particularly one charging a rate of $300 an hour.").  The court also noted that

"billing entry takes merely seconds to complete, not the six minutes Mr. Epstein claims to have

expended logging each entry."  Id.  Finally, the court noted further that the amount claimed was

in fact "borderline conscience-shocking."  Id. (citing Deptford, 279 Fed. Appx. at 126 n.2).

In this case, Mr. Epstein did not take L.J.'s clear admonishment that billing entries are not

appropriately billed at a substantial rate.  Mr. Epstein submitted 2.6 hours for "final draft attorney

bill emailed to atty," charging $1,040.  Pl. br. at Ex. D.  This entry constituted a full 3.5% of the

entire fees originally charged.  Because Mr. Epstein was previously warned against such behavior

in both Deptford II and in L.J., his continued practice constitutes thumbing his nose to the Court.

Such behavior cannot be countenanced.[13]

### 4.    Other deficiencies

In addition to the deficiencies in Mr. Epstein's submission in L.J. that persisted in this

filing, other deficiencies exist in Mr. Epstein's request that further illuminate its absurdity.  In

Deptford II, the court reduced Mr. Epstein's 30.5 hours purportedly spent drafting a brief where

the court found that it was a mere eleven pages and contained "essentially boiler-plate legal

standards."  2006 WL 3779820 at *9.  In this filing, Mr. Epstein billed 9.9 hours to "draft and file

sj motion," for a total bill of $3960.  Pl. br. at Ex. D.  What's remarkable about this billing is that

the brief is nearly identical–apart from the facts–to Mr. Epstein's L.J. brief.  Compare Civ. No.

06-5350, Docket No. 92, with Civ. No. 08-4019, Docket No. 7.  Thus, the 9.9 hours to draft it is

a clear overstatement, which Mr. Epstein knew based on Deptford II.

---

[13] Mr. Epstein was also warned in L.J. that billing for certain email related activities is inappropriate.  2009 WL 995458, at *14.  Specifically the court cited to Mr. Epstein's numerous billing entries for the "review of ECF e-mail," email generated by the court's electronic docketing system.  Id.  The court noted that "'not only would [reviewing ECF email] consume a matter of seconds, but they would ordinarily be performed by secretarial or non-legal staff, not a $275 per hour attorney.'"  Id. (quoting Garner v. Brenadier Lounge, NO. 06-13318, 2008 WL 4852963, at *2 (E.D. Mich. Nov. 7, 2008)).  The court therefore declined to reimburse Mr. Epstein for any such billing.

Similarly in this motion, Mr. Epstein has no fewer than four entries for the review of ECF mailings, for a total of 0.6 hours billed at $400 per hour.  Pl. br. at Ex. D.  This totals $240 in billing for what should not have been billed at all, and yet which was re-affirmed by Mr. Epstein with the supplemental brief.

Furthermore, and much more egregiously, Mr. Epstein's request includes a gross overstatement of fees related to the summary judgment motion–an overstatement that rises to the level of a Rule 11 violation.  In the original summary judgment brief and affidavit, Mr. Epstein included the following four billing entries: "review sj motion opposition; reply to sj motion opposition; prep, travel and attend oral argument; review opinion, explain to MG."  Pl. br. at Ex. D.  He estimated that these four entries would take 11.5 hours, resulting in an additional $4600 in fees.  Mr. Epstein duly added these estimated expenses to the other fees actually incurred.

Mr. Epstein did not attempt to hide that he was estimating these fees, and he in fact included a footnote explaining that they were "anticipated" charges.  Id. at 14 n.2.  That Mr. Epstein sought to bill for expenses incurred in drafting and defending the fee petition is fully justified under the law.  See Planned Parenthood, 297 F.3d at 268.

However, where Mr. Epstein's submission falls short and rises to sanctionable conduct is that this factual allegation of fees was predicated on Defendant actually responding to the motion–a response that never came.  Once that response did not happen, the estimated fees, which accounted for nearly 16% of all of the fees, were no longer proper.  Nevertheless, when Mr. Epstein filed the supplemental brief and affidavit–fully knowing that Defendant did not respond–he not only did not withdraw the anticipated fees, but he added to them.  See Pl. supp. br. at 6 n.3 ("I hereby amend my attorney fee demand to include an additional 1.2 hours ($480) for this brief making my total fee demand $29,560.").[14]  Under Rule 11, this factual assertion no

---

[14] The Court also takes exception with Mr. Epstein charging $480 to file a supplemental brief that was only filed to explain his own poor performance in L.J.

longer had evidentiary support and Mr. Epstein should have withdrawn part of his request.[15]  His

failure to do so is just further egregious behavior on his part.

**5.      Appropriate Fee Award in M.G.**

Using the above factual and procedural deficiencies, and without such a detailed analysis

as would otherwise be required were the Court to grant Plaintiff's motion, the Court concludes

that–at most–Mr. Epstein should have billed 53.6 hours at $250 per hour, for a total of $13,400

plus costs.  The Court makes this determination by subtracting from the 72.7 hours submitted 0.6

hours for ECF emails, 2.6 hours for drafting the final bill, 4.4 hours for drafting the summary

judgment motion, and 11.5 hours for responding to the Defendant's brief.  The Court also would

not have granted the additional 1.2 hours spent drafting the supplemental brief.  Mr. Epstein's

total award would have been $13,982, or only **47%** of his original request for $29,560.

**D.      Summation of the Request**

Based on the above, the Court hereby admonishes Jamie Epstein that a fee request is not

the opening salvo in a back and forth negotiation with the court.  The request is not the sticker

price on a used car that all parties understand is the starting point for spirited dickering.  Instead,

such grossly inflated requests like Mr. Epstein has made here (and has a history of making in the

District of New Jersey) demean the judicial process.  His requests waste the Court's invaluable

time and cast a pall over Mr. Epstein's very reputation.  Mr. Epstein has a duty of candor and

honesty to the court, and he must exercise that duty in each and every submission.  Simply put,

he breaches his duty to the court when he when submits requests for fees that garner no more

_____

[15] Mr. Epstein's filing contains three instances of sanctionable conduct: 1) failure to
adjust his pre-2008 billing (Rule 11), 2) improper affidavit (Local Civil Rule 7.2), and 3) failure
to withdraw the estimated fees (Rule 11).

than 47% of the original request.

In this particular case, Mr. Epstein's request is so shockingly high and riddled with factual and procedural errors that it is sublimely absurd.  Stated differently, his request shocks the conscience of the Court and it cannot be granted, even in part.  While the Court understands that this is a "harsh" result, see Cimador, 645 F. Supp. at 1276, the result is nevertheless warranted to prevent "inexcusable reaching for fees–to the burden of the court."  Lewis, 944 F.2d at 958.  While Mr. Epstein "veered dangerously close to [the] line" in his fee request in L.J., 2009 WL 995458, at * 8 n.9, this request crosses it.

Therefore, Plaintiff's Motion for Summary Judgment is denied.  Moreover, since the only claim made in the Complaint is for attorney's fees, the entire matter is hereby dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is DENIED, Plaintiff is awarded no fees, and the case is DISMISSED.


Dated:  10-21-2009                                              /s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge